UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 15-cv-80349-MIDDLEBROOKS/BRANNON

HOLLY HARGETT,

      Plaintiff,

v.

FLORIDA ATLANTIC UNIVERSITY
BOARD OF TRUSTEES,

      Defendant.

_____/

## ORDER AND OPINION GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

THIS CAUSE comes before the Court on Defendant Florida Atlantic University Board of Trustees' ("FAU") Motion for Summary Judgment ("Motion"), filed June 23, 2016. (DE 113). Plaintiff Holly Hargett ("Hargett") filed a Response on July 28, 2016 (DE 134), to which FAU replied on August 26, 2016 (DE 162). For the reasons stated below, FAU's Motion is granted.

**I.  Background**

Hargett has been an employee of FAU since 1988.[1] (DSOF ¶ 5). She began working as a librarian at FAU's Interlibrary Loan (ILL) Department in 2000. (*Id.* at ¶ 6). Since childhood, Hargett has suffered from epilepsy, a condition that causes seizures. (*Id.* at ¶ 1). Despite taking medication to control them, Hargett continues to experience seizures. (*Id.* at ¶ 2). These occur in three forms, each of which produces different degrees of short-term debilitation. Most

_____

[1] Pursuant to Local Rule 56.1(a), FAU filed a Statement of Undisputed Facts the same day as the instant Motion. (DE 112). Hargett filed a Statement of Material Facts in opposition (DE 132), to which FAU filed a factual reply (DE 161). Except where Hargett introduces additional facts or disputes those raised by FAU, the Court will refer solely to FAU's Statement, which is styled "DSOF." Hargett's Statement in opposition, where referenced, is labeled "PSOF." FAU's factual reply, where referenced, is labeled "DFR."

frequently, they manifest as petit mal seizures, (*Id.* ¶ 1), during which she temporarily loses consciousness. (Hargett Depo. 31:5-14). Less often, but not infrequently, Hargett experiences a variant that causes her to briefly lose focus and prevents her from speaking (though she can still hear). (DSOF ¶ 1; Hargett Depo. 31:1-4, 214:24-215:7). The least common type of seizure triggers Hargett's body to make sudden, uncontrollable jerks. (DSOF ¶ 1; Hargett Depo. 32:13-17). Sometimes, the seizures "draw out a lot of [her] energy" (Hargett Depo. 216:10-11). But other times, she returns to work immediately afterward. (*Id.* at 11-12). In no case does a seizure subsequently affect her mood (Hargett Depo. 218:9-16) or her ability to concentrate (DSOF ¶ 4). It typically takes Hargett between two to seven minutes to recover from a seizure, and up to twenty minutes on the rare occasion an ambulance is called. (DSOF ¶ 4; PSOF ¶ 4).

As early as 2008, Hargett informed FAU officials that she was epileptic, that her seizures were brought on by high "tension and stress," and that she considered her department to be a stressful work environment that could produce such a reaction. (DSOF ¶¶ 7-9; Hargett Depo. 274:20-275:7 & Ex. 8). Hargett's psychologist, Dr. Glenn Ross Caddy, confirmed that her stress and anxiety are directly associated with her perception of workplace events. (DSOF ¶ 9).

Starting on May 30, 2011, Troy Christenson ("Christenson") became Hargett's supervisor. (DSOF ¶ 11). Hargett felt that from the start of her relationship with him, Christenson communicated his expectations poorly. (DSOF ¶ 12). Within six months, Hargett developed the impression that Christenson was becoming uniquely "rough" or "harsh" in his treatment of her. (DSOF ¶ 12; PSOF ¶ 30; Hargett Depo. 301:20-302:8). Specifically, she avers that Christenson (1) spoke angrily only towards Hargett in front of others (PSOF ¶ 30.b); (2) refused to engage with her on a friendly basis (*id.*); (3) permitted co-workers to eat lunch at their desks but prevented her from doing so (*id.* at ¶ 30.c); (4) questioned her work in detail (*id.* at ¶

2

30.e); (5) barred her from entering the staff lounge before work (*id.* at ¶ 30.f); (6) took work away from her and refused to provide her training (*id.* at ¶ 30.j); and (7) rejected her offers to perform additional tasks (*id.* at ¶ 43). One of Hargett's current co-workers, Lynn Ghannoum ("Ghannoum"), and one former co-worker, Kwesi Tross ("Tross"), testified at deposition that Christenson especially scrutinized and micromanaged Hargett. (PSOF ¶ 30). Hargett claims that prior to serving under Christenson, she was acknowledged by previous supervisors as an excellent employee.[2] (PSOF ¶ 24).

The Parties dispute whether Christenson treated female subordinates disparately from men. (DSOF ¶ 12; PSOF ¶ 12). Hargett claims that Christenson (1) applied workplace policies on socialization inconsistently, allowing men to discuss personal matters and sports but rigorously policing women's conversations (PSOF ¶ 30.a); (2) joked with and acted friendly towards men (*id.* at ¶ 30.b); (3) picked on women more often (*id.*); and (4) criticized Hargett and Ghannoum's work pace, despite their being more efficient employees than a male comparator (*id.* at ¶ 30.d). FAU counters that Hargett herself perceived Christenson to act more leniently towards some of Christenson's female subordinates. (DSOF ¶ 12).

Hargett also claims, and FAU disputes, that Christenson ostracized her because of her disability. She alleges specifically that during her seizures, Christenson would stand over her but would not assist her, and that he would instruct Hargett's co-workers and passers-by not to help her either. (PSOF ¶ 30.h). After her seizures were over, Christenson at least once allegedly laughed and, in reference to the bruises she sustained, commented, "I see how you're really,

---

[2] The Parties debate the favorability of Hargett's old evaluations and the circumstances surrounding several pre-Christenson incidents. One incident involved Hargett's race discrimination complaint against her former supervisor, Dawn Smith ("Smith"), in 2008. (PSOF ¶ 27). Hargett connects this complaint to alleged retaliatory actions she later suffered while working under Christenson. I will not address most of these events, as they are not relevant to her present claims.

really hurting yourself." (*Id.* at ¶ 30.i).  In addition, Christenson purportedly became "very upset" when an ambulance was called to assist Hargett, after she suffered a seizure-related injury. (*Id.* at ¶ 30.k).  She contends that after that incident, Christenson ordered her to go home, in spite of her insistence at the time that she was able to continue working. (*Id.*).  Similarly, according to Hargett, Christenson docked her sick or vacation leave time based on the time she spent recovering from a seizure[3] – even though he allowed another employee to stay on the clock while engaging in non-work-related activities. (*Id.* at ¶ 30.l).  Finally, Hargett maintains that, due to the stress from Christenson's bullying and harassment, her seizures at work become more frequent.[4] (*Id.* at ¶ 31).  During an undisclosed period under Christenson, Hargett sometimes suffered between four and six petit mal seizures per day. (*Id.*).

On January 18, 2012, Hargett's physician, Dr. Adriana Rodriguez, sent a letter to FAU, cautioning that Hargett was diagnosed with epileptic seizures, which were "triggered by stress." (DSOF ¶ 13; Rodriguez Depo. Ex. 2).  Dr. Rodriguez wrote that it was "medically necessary" for Hargett "to be allowed to step away from the stressful environment to regain composure to avoid going into Epileptic Seizures." (DSOF ¶ 13; Rodriguez Depo. Ex. 2).  When presented with her physician's letter, Christenson – according to Hargett – replied that he did not like the idea of her stepping away from her desk.  (PSOF ¶ 34; Hargett Depo. 332:7-16).  At his deposition, Christenson conceded that he did not believe this measure was medically necessary because of the letter's failure to define what constituted "stress." (PSOF ¶ 34; Christenson Depo. 4-25).  By February 2012, Hargett had decided not to pursue an accommodation. (DSOF ¶ 14).

---

[3] He sometimes refused to let Hargett take a walk to calm down and prevent a seizure.  (PSOF ¶ 34).

[4] At deposition, Hargett testified that she believed Christenson criticized and picked on her intentionally to provoke her seizures.  (Hargett Depo. 437:2-4).

Thereafter, Hargett received sporadic reprimands from Christenson relating to her office decorum and break habits. On May 24, 2012, Christenson reprimanded her for allegedly calling Florida governor Rick Scott an "asshole," saying she hated him, and expressing the wish that someone would shoot him. (DSOF ¶ 16; Hargett Depo. Ex. 10). The Parties dispute whether Hargett actually said these things.[5] (PSOF ¶ 16; DFR ¶ 16). Three days later, on May 27, Hargett and Ghannoum had a meeting with Dr. William Miller ("Miller"), the dean of the FAU libraries, to complain about Christenson's behavior. (PSOF ¶ 35). When they returned to the office, Christenson warned them via email that they faced "write-ups" if they did not adhere to break policies. (Id.). On September 13, 2013, Hargett was again reprimanded, this time for using "crude and vulgar language" on a telephone call during work.[6] (DSOF ¶ 17 & Ex. M).

Hargett's first disability accommodation request came on October 17, 2013, following a September 17 meeting with officials in the Equal Opportunity Program (EOP) office. (PSOF ¶ 36). The request sought additional daily leave time in order to compose herself to avoid a seizure or to recover following one. (DSOF ¶ 15). FAU granted her twenty minutes per day for these purposes. (PSOF ¶ 15; DSOF Ex. F at 3). At the September 17 meeting, Hargett also complained about Christenson's harassment, discipline, and her resulting stress. (PSOF ¶ 36). In response, FAU informed her that disciplinary polices and expectations of professionalism applied to all employees, regardless of disability status. (DFR ¶ 36; DSOF Ex. F at 3).

---

[5] Hargett refused to sign her reprimand, which would have acknowledged Christenson's characterization of the incident. (Hargett Depo. Ex. 10). However, two of Hargett's co-workers signed the document. (Id.). After receiving the reprimand, Hargett drafted a more innocuous account of the episode, which two different co-workers signed in support. (Hargett Depo. Ex. 11).

[6] According to Hargett, the call related to potential identity theft, over which Hargett recalls she was a "nervous wreck." (Hargett Depo. 353:5). The situation provoked her to use a "high-toned voice" (but not, in her version, to curse). (Hargett Depo. 359:17-19). Again, Hargett refused to sign the reprimand (DSOF Ex. M) and disputes whether her behavior was inappropriate. (PSOF ¶ 17).

However, Robin Kabat ("Kabat"), Associate Director of Human Resources, told Christenson to keep the ILL Department "as stress-free as possible," though Christenson's own supervisor, Dawn Smith ("Smith"), directed him to "continue operations as normal." (Christenson Depo. 120:1-24; PSOF ¶ 37).   Hargett alleges that after this and other meetings with FAU administrators, Christenson escalated his bullying and harassment. (PSOF ¶ 32).

On April 29, 2014, Hargett had a verbal exchange with another department employee, Jillian Bortot ("Bortot"), which stemmed from Bortot's temporary assumption of some of Hargett's duties.[7]   (Hargett Depo. 374:12-382:8).   Later that day, Bortot complained to Christenson that Hargett had threatened and verbally abused her. (DFR Ex. F).   The next day, April 30, Christenson wrote Hargett an email, chiding her for "yelling" at Bortot in an "outburst," and reminding her of the need to "act professionally." (DSOF ¶ 18; Hargett Depo. Ex. 13).   After Hargett received the email, she confronted Christenson and Bortot about their characterization of her behavior the day before.   (DSOF ¶ 18).   FAU contends that Hargett became loud and belligerent with Christenson and Bortot, and that her conduct disrupted the workplace. (DSOF ¶ 18; Hargett Depo. Ex. 14).   Hargett recalls that it was Christenson who got angry and that she was merely defending herself and soliciting a corroborating account from Ghannoum. (Hargett Depo. 383:18-384:23).   Hargett, anticipating the onset of a seizure (PSOF ¶ 20), then left the office without Christenson's authorization.   (Hargett Depo. 385:3-10 & Ex. 14).   On May 29, 2014, Gary Perry, Interim Provost, notified Hargett that he and Miller were proposing a three-day suspension for her behavior on April 30 and the accumulated earlier

---

[7] As a result of Hargett having recently sustained a seizure-induced ankle injury, Christenson directed Bortot to complete some of Hargett's more physically demanding daily tasks.   Hargett claims that Christenson had cleared her at the beginning of the day to perform those tasks and that she was disconcerted when she learned from Bortot that Christenson had reassigned them. (Hargett Depo. 374:12-378:8).   She denies acting rudely towards Bortot.   (PSOF ¶ 18).

reprimands. (DSOF ¶ 18; Hargett Depo. Ex. 14). The suspension was imposed on June 16, after a hearing. (DSOF ¶ 20).

On June 12, 2014, between the date of the notice and the decision, Hargett's counsel drafted a letter to FAU disputing the basis for suspension and requesting that FAU accommodate her disability. (DSOF ¶ 19 & Ex. O). Hargett's accommodation request was three-fold: (1) "primar[ily]," that Christenson "cease his hostile confrontations with" Hargett, which, counsel alleged, resulted in "eight to ten" seizures at work; (2) that FAU "sensitize" Christenson "to dealing with women in general, and women with epilepsy in particular, or [] move him out of [] Hargett's chain of command"; and (3) switch Hargett's work station to an empty cubicle to be "furnished with objects lacking sharp corners," thereby reducing the risk of injury from seizure. (DSOF Ex. O at 2-3; PSOF ¶ 38). Hargett's counsel faxed the letter to Kabat on June 23, 2014. There is no evidence that FAU responded to the first two of Hargett's requests, but it did install padding to Hargett's desk to minimize her injury risk. (DSOF ¶ 15 & Ex. F at 4).

The same day that Hargett's letter was faxed to Kabat, Christenson prepared an addendum to Hargett's 2014 performance evaluation, which put her on a six-month Performance Improvement Plan (PIP). (PSOF ¶ 38). Among other things, the addendum criticized Hargett for "bypass[ing] the chain of command on more than one occasion due to dissatisfaction with changes in policies or procedures." (PSOF ¶ 38 & Ex. 18 at 5). The plan stipulated, *inter alia*, that Hargett (1) "not leave the office for personal reasons after the start of her scheduled time except to use the restroom"; (2) "maintain a professional demeanor in the work environment, both in and out of the office"; and (3) "mark on the board and verbally notify coworkers when she is leaving the office." (PSOF ¶ 38 & Ex. 18 at 5).

Between April and August of 2014, three "Support Paraprofessional" (SP) positions in the ILL Department were reclassified as "Academic Paraprofessionals" (AMP). (PSOF ¶ 40). The reclassified position entailed a higher pay scale than the SP position. (*Id.*). Hargett and Ghannoum (who presumably were classed as SPs) were not selected for reclassification, though Hargett admits she did not apply (DSOF ¶ 22) because, in light of her negative relationship with Christenson, she believed doing so would have been a "waste." (Hargett Depo. 418:4-8). Hargett implies, however, that she met the minimum qualifications for reclassification. (PSOF ¶ 21). FAU counters that the AMP position contained additional criteria that Hargett did not meet – namely, holding a bachelor's degree and having undergone specialized vocational training. (DSOF ¶¶ 21-22; DFR ¶¶ 21, 40). The three employees who filled the AMP positions were women. (DSOF ¶ 22). Hargett remains the highest paid employee in the ILL Department. (*Id.*).

Hargett filed a discrimination charge against FAU with the EEOC on July 17, 2014, alleging that she experienced discrimination based on sex and disability, as well as retaliation for complaining about that discrimination. (PSOF ¶ 39).

Hargett initiated this action on March 16, 2015. (DE 1). She amended her complaint once, on February 1, 2016. (DE 79, hereinafter "Compl."). The Amended Complaint contains nine counts, which, for the purposes of the instant Motion, are considered as three causes of action: (1) disability discrimination under Titles I and II of the Americans with Disabilities Act of 1990 (ADA) and the Rehabilitation Act of 1973 (Compl. ¶¶ 31-73); (2) sex discrimination under Title VII of the Civil Rights Act of 1964 (Title VII) (*Id.* at ¶ 81-85); and (3) retaliation under the ADA and Title VII (*Id.* at ¶¶ 74-80, 86-92). In her Response, Hargett also attempts to raise a claim based on a hostile work environment.

## II.    Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)(1)(A)).  Where the non-moving party bears the burden of proof on an issue at trial, the movant may simply "[point] out to the district court [] that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. After the movant has met its burden under Rule 56(c), the burden shifts to the non-moving party to establish that there is a genuine issue of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585 (1986).

Although all reasonable inferences are to be drawn in favor of the non-moving party, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986), the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586.  The non-moving party may not rest upon the mere allegations or denials of the adverse party's pleadings, but instead must come forward with "specific facts showing that there is a *genuine issue for trial*." *Id.* at 587 (citing Fed. R. Civ. P. 56(e)).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.*  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990).  If the non-moving party

fails to make a sufficient showing on an essential element of her case on which she has the burden of proof, the moving party is entitled to a judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 323.

### III. Discussion

#### A. Disability Discrimination

Hargett first claims that FAU discriminated against her on the basis of a disability. (Compl. ¶¶ 31-73). Her cause of action arises under the ADA, 42 U.S.C. §§ 12101-12117, and – because FAU is a covered entity that receives federal funds – the Rehabilitation Act, Pub. L. No. 93-112, 87 Stat. 355 (codified at 29 U.S.C. § 794). Courts conduct a unitary analysis of claims under these statutes because the same standards governing ADA claims apply to claims under the Rehabilitation Act.[8] 29 U.S.C. § 794(d); *Cash v. Smith*, 231 F.3d 1301, 1305 (11th Cir. 2000).

Where, as here, a plaintiff intends to prove discrimination through circumstantial evidence, the claim is assessed according to the *McDonnell-Douglas* framework. *Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1193 (11th Cir. 2004). Pursuant to that framework, the plaintiff bears the initial burden of production to establish the elements of a prima facie case. *Id.* Satisfying those elements creates "a presumption of discrimination," shifting the burden to the employer defendant to offer a legitimate, non-discriminatory reason for the adverse action. *Id.* If the employer meets this burden, then the onus shifts back to the employee to raise a reasonable inference that the employer's reason is pretextual. *Id.*

---

[8] There is one aspect of the Rehabilitation Act that is exceptional. Because the Act's statutory language refers to discrimination "solely by reason of" a disability, 29 U.S.C. 794(a), its causality standard is more rigorous than the ADA's (which permits a finding of liability against employers with multiple motives). *McNely v. Ocala Star-Banner Corp.*, 99 F.3d 1068, 1073-74 (11th Cir. 1996); *Soledad v. U.S. Dep't of Treasury*, 304 F.3d 500, 503-505 (5th Cir. 2002) (explaining that §794(d), the provision importing the ADA's interpretive standards, does not override the plain language of §794(a)). The import of this distinction is discussed *infra*, n.13.

To establish a prima facie case under either the ADA or the Rehabilitation Act, a plaintiff must show that (1) she has a disability; (2) she is a "qualified individual," in that she is "able to perform the essential functions of [her position] with or without reasonable accommodation"; and (3) the defendant "unlawfully discriminated against [her] because of the disability." *Reed v. Heil Co.*, 206 F.3d 1055, 1061 (11th Cir. 2000).

Unlawful discrimination includes not just disparate treatment, but also failing to make reasonable requested accommodations that do not impose an undue hardship on the employer's business operations. 42 U.S.C. § 12112(b)(5)(A); *D'Angelo v. ConAgra Foods, Inc.*, 422 F.3d 1220, 1236 (11th Cir. 2005). Because Hargett presents the unlawful discrimination as two distinct theories – disparate treatment and failure to accommodate – I will address them separately.

1. Disparate Treatment

FAU argues Hargett fails to establish a prima facie case of disability discrimination. I examine each disputed element of her prima facie case in turn.

**a. Disability:** There are three ways an ADA (and therefore Rehabilitation Act) plaintiff can demonstrate her disability. According to the statute:

> The term 'disability' means, with respect to an individual--
> (A)   Physical or mental impairment that substantially limits one or more major life activities of such individual;
> (B)   a record of such an impairment; or
> (C)   being regarded as having such an impairment . . .

42 U.S.C. § 12102(1). Hargett contends that she is disabled because her epilepsy substantially limits the major life activities of "speaking [and] interacting with other," or in the alternative, because FAU regards her as being impaired. (Compl. ¶ 32). FAU responds that Hargett is not disabled within the meaning of the ADA because, while impaired, she is not limited in a major

11

life activity. Notably, FAU does not challenge Hargett's invocation of the "regarded as" branch to satisfy the disability prong. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993) (explaining that moving party must cite to "absence of evidence to support the non-moving party's case" or offer "affirmative evidence demonstrating that the non-moving party will be unable to prove its case at trial"). On that basis alone, the Court could find that summary judgment as to the disability prong is unwarranted.

There is also enough evidence in the record from which a reasonable factfinder could conclude that Hargett's epilepsy substantially limits her ability to speak to others, which is a major life activity under the ADA. 42 U.S.C. § 12102(2)(A). "[T]he question of whether an individual's impairment is a disability under the ADA should not demand extensive analysis."[9] *Mazzeo v. Color Resolution Int'l., LLC*, 746 F.3d 1264, 1268 (11th Cir. 2014) (quoting § 2(b)(5), Pub. L. 110–325, S. 3406). The mere existence of an impairment, such as epilepsy, does not automatically limit a major life activity. *Simpson v. Ala. Dep't of Human Resources*, 311 F. App'x 264, 267-68 (11th Cir. 2009) (per curiam). However, Hargett testified that her two most common types of seizures cause her to either lose consciousness entirely or prevent her from speaking while conscious. (DSOF ¶ 1; Hargett Depo. 30:14-31:14, 214:24-215:7). During the period when she was exposed to high stress, she experienced up to six petit mal seizures per day. (PSOF ¶ 31). That kind of regular interruption to her verbal and mental faculties arguably restricted her ability to communicate effectively with others. *See, e.g., Matczak v. Frankford*

---

[9] EEOC regulations enacted to interpret the ADA Amendments Act of 2008 (ADAAA), Pub. L. 110–325, 122 Stat. 3553 (2008), provide that "[t]he term 'substantially limits' shall be construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA. 'Substantially limits' is not meant to be a demanding standard." 29 C.F.R. § 1630.2(j)(1)(i). Significantly, the legislative history of the ADAAA reveals that Congress specifically "reject[ed]" decisions that had found short, episodic seizures "not sufficiently limiting." 2008 House Judiciary Committee Report at 19–20.

*Candy & Chocolate Co.*, 136 F.3d 933, 937-38 (3d Cir. 1997) (jury question whether plaintiff with seizures of short duration and limited restrictions substantially limited in major life activity); *Otting v. J.C. Penney Co.*, 223 F.3d 704, 710-11 (8th Cir. 2000) (epileptic seizures of varying severity lasting between thirty seconds and two minutes but which incapacitated speech and movement potentially limited major life activity of speaking, among others).

FAU, citing to a since-repealed EEOC regulation, 29 C.F.R. § 1630.2(j)(2)(i)-(iii) (effective until May 24, 2011), insists that Hargett's epilepsy cannot substantially limit any major life activity because the duration of each seizure is brief and she can recover within minutes. However, the current iteration of the regulations states that "[a]n impairment that is *episodic* or in remission is a disability if it would substantially limit a major life activity *when active.*" 29 C.F.R. § 1630.2(j)(1)(vii) (emphasis added). As discussed, Hargett's seizures may limit a major life activity when active. Accordingly, FAU has not demonstrated that Hargett cannot prove she is disabled.

    **b.  Qualified Individual:** FAU argues that Hargett is not qualified for her job because she is unable to handle "tasks [that] are part of the normal workplace tribulations and essential functions of her position," which include receiving instructions, undergoing performance reviews, and accepting informal critiques from her supervisor. (DE 113 at 6). As evidence, FAU refers to Hargett's self-described resistance to Christenson's criticisms (Compl. ¶ 20(a) & (b)) and to the propensity for her altercations with Christenson to induce seizures. Hargett defends her qualifications based on positive reviews she received before working for Christenson.

    A "qualified individual" is one who can perform the "essential functions" of the position "with or without reasonable accommodations." *Reed*, 206 F.3d at 1061. It is true that "[a]n

employee's ability to handle reasonably necessary stress and work reasonably well with others are essential functions of *any position*. Absence of such skills prevents the employee from being . . . 'qualified.'" *Williams v. Motorola, Inc.*, 303 F.3d 1284, 1290-91 (11th Cir. 2002) (emphasis added). But even accepting *arguendo* FAU's characterization of Hargett as a difficult subordinate, Christenson's own addendum to the performance review undermines FAU's position that she was unable to perform her position's essential functions. Although Christenson highlighted areas in which Hargett needed to improve, he wrote, as to her "Job Knowledge/Job Skills/Quality of Work," that Hargett "*is fully capable of performing these duties.*"[10] (PSOF Ex. 18 at 1) (emphasis added). Christenson also testified that for the year 2015, Hargett "me[t] expectations in all areas." (Christenson Depo. 128:22-25).[11] Since there is more than sufficient evidence that Hargett is qualified for her position without an accommodation, summary judgment on the qualified individual prong is inappropriate.

> **c. Discrimination:** FAU also contests the third prong of Hargett's prima facie case, which requires an ADA plaintiff to demonstrate that she was subjected to unlawful discrimination "*because of* the disability." *Reed*, 206 F.3d at 1061 (emphasis added). FAU first argues that Hargett has not suffered an adverse action. Next, it urges that Hargett has not shown that any alleged adverse action was taken because of a disability.

> Hargett relies on three adverse actions: (1) the wrongful suspension, which deprived her of three days' pay; (2) the failure to reclassify her into the higher paying AMP position; and (3)

---

[10] Concerning "Quality of Work/Organization/Time Management," Christenson said she "is generally knowledgeable about how to process materials." (*Id.* at 3). On her "Work Practices/Dependability," he found that Hargett is "dependable and shows up for at her assigned time." (*Id.* at 4). Finally, with regard to "Customer Service/Teamwork/Interpersonal Skills/Diversity," Christenson wrote that Hargett "strives to provide good customer service to all FAU constituents outside the department." (*Id.* at 6).

[11] Another reason it is difficult to believe that FAU does not consider Hargett qualified as a librarian is that FAU continues to employ her – as a librarian.

Christenson's low ratings on Hargett's annual performance evaluations, which caused her to miss out on bonuses. The ADA lists some possible areas of work onto which discrimination may intrude, specifying "job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training," and the catchall "other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). In interpreting these terms, conditions, and privileges, courts apply the same precedents used to analyze the adverse actions of Title VII claims. *Doe v. DeKalb Cty. Sch. Dist.*, 145 F.3d 1441, 1447-48 (11th Cir. 1998). Those precedents hold that while Title VII "does not require proof of direct economic consequences in all cases, the asserted impact cannot be speculative and must at least have a tangible adverse effect on the plaintiff's employment." *Davis v. Town of Lake Park*, 245 F.3d 1232, 1239 (11th Cir. 2001). Negative changes in the terms, conditions, or privileges of employment must, therefore, be objectively "serious and material" to count. *Id.*

The Eleventh Circuit has held in some circumstances that an unpaid suspension "represents an adverse employment action." *McMillan v. Fulton Cty. Gov't*, 349 F. App'x 440, 442 (11th Cir. 2009) (per curiam) (thirty day suspension without pay materially adverse); *see also Russell v. Bd. of Trustees of Univ. of Ill. at Chicago*, 243 F.3d 336, 341 (7th Cir. 2001) (five days); *Evans v. Ala. Dep't of Corr.*, 418 F. Supp. 2d 1271, 1276-77 (M.D. Ala. 2005) (ten days). The Seventh Circuit in *Russell* reasoned that a pecuniary loss combined with a formal modification to one's employment record is an "avowedly disciplinary" consequence that is more than "trivial." *Russell*, 243 F.3d at 341-42. But suspensions as short as one day may not be material because, in some instances, they reflect only *de minimis* losses. *Embry v. Callahan Eye Found. Hosp.*, 147 F. App'x 819, 829 (11th Cir. 2005) (per curiam) (one day suspension, where "most [possible] compensation lost was $88.73," did not reach threshold). Here, Hargett

15

was suspended without pay for three days. Because the Eleventh Circuit has not determined precisely when an unpaid suspension becomes material, I will assume, without deciding, that this qualifies as an adverse action.

Christenson's failure to reclassify Hargett's position could also have been a materially adverse action. It is well established that failing to promote an employee is a significant omission. *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998). Reclassifying a job to increase its pay scale is analogous to affording the opportunity for promotion. *See McClintick v. Leavitt*, Civ. No. RDB 05-2880, 2007 WL 927616, at *5 (D. Md. Mar. 26, 2007) (employer's failure to nominate plaintiff for permanent increase in pay scale could be materially adverse action). Hargett presents evidence that the AMP class had a higher pay scale than the SP class. That means she may have lost the chance to attain a higher salary. However, Hargett was not qualified for the AMP position because she does not dispute that she did not have a bachelor's degree. Although Hargett insists that the job did not require this additional credential, the evidence – specifically, the "position forms" – clearly contradicts her.[12] *See Rice-Lamar v. City of Ft. Lauderdale*, 232 F.3d 836, 842-43 (11th Cir. 2000) (Title VII prima facie showing incomplete without proof that employee was qualified for position at issue). Furthermore, she did not even apply for the reclassification. As a result, the reclassification is not a materially adverse action.

Lastly, Christenson's negative 2014 performance review, supplemented by the evaluation addendum and PIP, does not qualify as a materially adverse action. The Eleventh Circuit holds

---

[12] The "position forms" for the reclassified employees state the "minimum qualifications" as Hargett understands them, but separately list "*required*" "Education/Training/Experience." (DSOF Ex. Q). One of the qualifications under that heading is a "bachelor's degree." (*Id.*). Hargett offers no evidence challenging whether the women who became AMPs fulfilled the additional educational requirement.

that a performance review which includes "allegedly unfounded criticism" that has "no tangible impact on the terms, conditions, or privileges of employment" is not actionable. *Davis*, 245 F.3d at 1242. It is true that when an evaluation imposes increased supervision and alters an employee's pay – including withholding a discretionary bonus – the action may be materially adverse. *Bender v. Miami Shores Village*, 578 F. App'x 822, 824 (11th Cir. 2014) (per curiam) (employer declining to grant bonus can, in theory, be materially adverse action); *Smith v. Quintiles Transnational Corp.*, 509 F. Supp. 2d 1193, 1203 (M.D. Fla. 2007) (finding PIP to be materially adverse, in part because it demanded increased supervision and temporarily deprived plaintiff of pay raises or bonuses).

Nevertheless, a plaintiff who claims that a lower performance rating deprived her of a bonus must introduce more than "her own self-serving allegations[] that she would have been guaranteed" one but for the quality of the review. *Cain v. Geren*, 261 F. App'x 215, 217 (11th Cir. 2008) (per curiam) (plaintiff's declaration that higher rating would have led to bonus was conclusory); *Brown v. Snow*, 440 F.3d 1259, 1265 (11th Cir. 2006) (downgrade on performance evaluation not actionable unless plaintiff can "*establish* that the lower score led to a more tangible form of adverse action") (emphasis added). Here, Hargett testified at deposition that a library employee's performance rating needed to reach a certain threshold to qualify the person for an annual bonus. (Hargett Depo. 498:12-14, 20-22). She stated further that Christenson's review diminished her rating relative to prior evaluations that had led to bonuses (*Id*. at 498:10-499:1) and submits as exhibits a series of annual evaluations showing the disparity between her earlier supervisors' and Christenson's assessments (PSOF Ex. 16E-N). She claims that she should have received a bonus for at least 2014. (Hargett Depo. 498:6-8, 23-25, 499:1). But this testimony does not establish that FAU had a discretionary bonus policy, or that if it did, Hargett

obtained bonuses for the years corresponding to her more positive reviews while missing them for the years she received more negative ones. Because the connection between the performance review and annual bonuses is supported by no more than Hargett's "self-serving allegations," *Cain*, 261 F. App'x at 217, the 2014 review is not a materially adverse employment action.

Although Hargett has introduced evidence from which a jury could reasonably find she suffered an adverse action due to her three-day suspension without pay, she has failed to cite to any evidence from which a jury could reasonably find the suspension was imposed due to her disability. That is because a plaintiff, as part of her prima facie case, must present some circumstantial evidence of an employer's discriminatory intent, beyond the mere occurrence of an adverse action. *J.A.M. v. Nova Southeastern Univ., Inc.*, 646 F. App'x 921, 927 (11th Cir. 2016) (per curiam) (plaintiff's prima facie case failed because he "alleged no other facts suggesting that [employer] dismissed him because of his mental disability").[13] Although FAU bungles the description of Hargett's burden – arguing that the third prong of the prima facie case requires Hargett to "demonstrate that the reason given by FAU was a pretext for a statutorily-protected purpose" (DE 113 at 9) – it expressly challenges the sufficiency of her prima facie case and the circumstantial evidence associated with the discrimination prong.[14] It has therefore met

_____

[13] *J.A.M.* was a Rehabilitation Act case and referenced the distinction made in n.8. 646 F. App'x at 926-27. The opinion hinted that a cause of action under this statute required, even at the prima facie stage, evidence that a disability was the *"sole* reason for dismissal." *Id.* at 927 (emphasis in original). Since Hargett does not meet the ADA's lower threshold, there is no need to differentiate her burden according to each statute.

[14] FAU addresses the issues in two separate sections of its Motion, one entitled "Discipline of the Plaintiff was not Discrimination but was Taken Due to a Legitimate Reason", (DE 113 at 9-10), the other labeled "Plaintiff's Discrimination Claims Fail as She Suffered No Adverse Employment Action" (*Id.* at 10-14). FAU's understanding of the prima facie case's third prong is plainly incorrect in light of the *McDonnell-Douglas* burden-shifting framework. FAU compounds its error by invoking a superseded standard for proving pretext, which would require Hargett to show *both* that its reason for discipline was false and that discrimination was the real reason. *See infra*, n.15. After delving into pretext, FAU doubles back and returns to intent and

its burden under *Celotex* of "pointing out to the district court [] that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.   Despite this, Hargett simply addresses FAU's pretext argument, contending she need not prove that discrimination was the real reason for her discipline.   It is enough, she maintains, for her to offer testimony – which she does in passing – contradicting the factual basis for the suspension. Hargett is correct that, *once the burden shifts back to her at this stage*, a plaintiff can usually establish pretext in one of two ways: "(1) by showing that the legitimate nondiscriminatory reasons should not be believed; or (2) by showing that, in light of all of the evidence, discriminatory reasons more likely motivated the decision than the proffered reasons." *Standard v. A.B.E.L. Serv., Inc.*, 161 F.3d 1318, 1332 (11th Cir. 1998); *Combs v. Plantation Patterns*, 106 F.3d 1519, 1529; *Ledbetter v. Goodyear Tire & Rubber Co., Inc.*, 421 F.3d 1169, 1185-86 (11th Cir. 2005) (observing that an inference of the reason's falsity is sufficient in the *"usual* case") (emphasis in original).[15]   But that does not mean that an ADA or Title VII plaintiff can entirely ignore the question of discriminatory animus.   *See Flowers v. Troup Cty. School Dist.*, 803 F.3d 1327, 1337-38 (11th Cir. 2015) (explaining that "evidence [that] at most might support an

---

causation, contending that Hargett "fails to provide any evidence of any conduct by FAU that specifically links the disciplinary actions to her disability." (*Id.* at 10).   In its section on adverse actions, FAU explains again that "no connection has been established between these actions . . . and a discriminatory motive." (*Id.* at 11-12).

[15] I emphasize "usually" because the Supreme Court has added the qualification that evidence of falsity alone will *sometimes* not be enough to survive the pretext inquiry.   *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 148.   "[T]here will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory." *Id.*   Those circumstances exist where the employee "created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred." *Id.*; *Chapman v. Al Transp.*, 229 F.3d 1012, 1025, n.11 (11th Cir. 2000) (recognizing *Reeves'* modification of *Combs*); *Flowers*, 803 F.3d at 1339 (same).

inference that [reason offered] may have been pretext of *something*" is not evidence that reason "was pretext of *discrimination*" based on protected classification) (emphasis in original).

To survive summary judgment, Hargett must introduce some circumstantial evidence of Christenson's animus to causally link the adverse action with her disability. *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011) (plaintiff must marshal "circumstantial evidence that creates a triable issue concerning the employer's *discriminatory intent*") (emphasis added).[16] *Smith* provides the outer bound for satisfying a prima facie Title VII discrimination claim because it permits evidence that meets the *McDonnell-Douglas* criteria (i.e., comparators) and "various [other] forms" that make a "convincing mosaic" of an employer's discriminatory animus.[17] *Id.* The Eleventh Circuit has not delineated what other forms of evidence count, but it has clarified that, even under the "convincing mosaic" framework, an inference of "intentional discrimination" is not permitted unless "something links the actions to the employee's" protected class. *Turner v. Florida Prepaid Coll. Bd.*, 522 F. App'x 829, 833 (11th Cir. 2013) (per curiam). Consequently, Hargett must raise that link upon a challenge to her prima facie case – or if she declines to do so then – at least at the pretext stage. Permitting otherwise would vitiate the statutory regime. Any disabled person on the receiving end of an adverse employment action would then have grounds to sue her employer. Nowhere in her brief does Hargett attempt to

---

[16] Since the evidentiary burdens of an ADA claim are supposed to mirror Title VII's *McDonnell-Douglas* framework, *Durley v. APAC, Inc.*, 236 F.3d 651, 657 (11th Cir. 2000), Hargett's ADA showing certainly cannot undershoot *Smith*'s criteria.

[17] Because the Eleventh Circuit has not made comparator evidence a necessary part of an ADA claim's prima facie showing, *Haines v. Cherokee Cty.*, Civ. No. 1:08-2916-JOF/AJB, 2010 WL 2821853, at *26 (N.D. Ga. Feb. 16, 2010) (comparator evidence is only "one way of proving discriminatory intent" in ADA claim) (internal quotations omitted), FAU's contention that Hargett failed to produce a comparator – i.e., a "non-disabled, non-degreed worker[]" that was reclassified (DE 113 at 14) – is not relevant.

make the requisite showing.[18]  Because Hargett fails to connect the potential adverse action of her suspension to any discriminatory animus based on disability, either as part of her prima facie case or to demonstrate pretext, FAU is entitled to summary judgment on her disability disparate treatment claim.[19]

2.  Failure to Accommodate

As to Hargett's second theory of disability discrimination, FAU asserts that it accommodated some of her requests and ignored only those that were vague and unreasonable. Hargett responds that FAU did not engage in an interactive process to determine whether it could accommodate one of the requests specified in her lawyer's June 2014 letter.  "An employer must provide reasonable accommodations for employees with known disabilities unless such accommodations would result in undue hardship to the employer.   An accommodation is reasonable, and thus required under the ADA, only if it allows the employee to perform the essential functions of the job."  *Earl v. Mervyns, Inc.*, 207 F.3d 1361, 1365 (11th Cir. 2000) (internal citation omitted).   The employee bears the immediate burden of identifying such an accommodation and the ultimate burden of persuasion that the accommodation is reasonable.  *Id.*

---

[18] She does, however, make a marginal attempt with respect to sex discrimination.  *See infra*, Section B.

[19] This is not a case of a non-moving party declining to rebut a ground that her opponent did not raise.   Silence in such circumstances is appropriate.  *Edwards v. Honeywell, Inc.*, 960 F.2d 673, 674 (7th Cir. 1992) ("When a party moves for summary judgment on ground A, his opponent is not required to respond on ground B – a ground the movant might have presented but did not.") (internal quotations omitted).   Here, though it misstated the law, FAU did implicate the causal prong of Hargett's prima facie case.   In an analogous situation, the Tenth Circuit affirmed summary judgment against a non-moving plaintiff.  *Sports Racing Serv., Inc. v. Sports Car Club of America, Inc.*, 131 F.3d 874, 892-93 (10th Cir. 1997).   That was because the argument in the movant's motion, although founded on an erroneous premise, still targeted an essential element of the plaintiff's claim.  *Id.* at 892.   The plaintiff, thus "alerted" to the issue, could not satisfy its burden by engaging only with the defective premise.  *Id. Sports Racing*'s reasoning is equally applicable here.   Hargett responds only to FAU's incorrect pretext premise, but not to its valid critique of the causal link between disability status and adverse action.

at 1367.   At the summary judgment stage, she must produce evidence that a reasonable accommodation was available.  *Willis v. Conopco, Inc.*, 108 F.3d 282, 285 (11th Cir. 1997). When a request is patently unreasonable, the employer has no duty to investigate it or begin the interactive process.  *Id.*; *Spears v. Creel*, 607 F. App'x 943, 948 (11th Cir. 2015) (per curiam). The same is true if the request does not make a sufficiently specific demand.   *Gaston v. Bellingrath Gardens & Home, Inc.*, 167 F.3d 1361, 1363 (11th Cir. 1999).

Assuming Hargett's disability status meets the ADA standard, FAU reasonably accommodated her request to take calming walks.[20]   Indeed, Hargett acknowledges that FAU consented to this request.  (PSOF ¶ 15).  As to two of the June 2014 requests, Hargett's Response is silent.   She fails to respond to FAU's arguments that her requests for Christenson to be transferred and to have Christenson "sensitized" to interacting with women and epileptics are unreasonable *per se*.   To the extent these are part of her claim, these allegations are waived. *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned").

The only accommodation request that Hargett does address is her demand that Christenson "cease his hostile confrontations with her" (DSOF Ex. O at 2) and that FAU provide her "calm, fair, non-confrontational treatment" (*Id.* at 3).   FAU argues that a request for non-confrontational treatment is not a direct and specific demand that would oblige it to conduct an investigation or begin the interactive process.

A demand for a supervisor to adopt a less overbearing management style is generally held to be unreasonable.  *Schwarzkopf v. Brunswick Corp.*, 833 F. Supp. 2d 1106, 1122-23 (D. Minn. 2011) (request for supervisor and others to not yell at plaintiff not reasonable).   That is true even

---

[20] Hargett does not dispute that FAU accommodated her request to work in a hazard-free cubicle space, since this fact is admitted in her Amended Complaint. (Compl. ¶ 27).

if the supervisor's conduct is actionable as an independent discrimination claim. *Haysman v. Food Lion, Inc.*, 893 F. Supp. 1092, 1106 (S.D. Ga. 1995) ("alleged harassment is actionable under the ADA, but not under a 'reasonable accommodation' analysis"); *Rodriguez v. John Muir Med. Ctr.*, Civ. No. 09-00731 CW, 2010 WL 3448567, at *12 (N.D. Cal. Aug. 31, 2010) (same); *but see Johnson v. Billington*, 404 F. Supp. 2d 157, 167-68 (D.D.C. 2005) (holding that harassment based on disability made request for transfer reasonable). Although "specific stressors . . . may in some cases be legitimate targets of accommodation," an employee cannot immunize herself from stress and criticism in general. *Gonzagowski v. Widnall*, 115 F.3d 744, 747-48 (10th Cir. 1997). By the same reasoning, appeals to work in a more nurturing work environment, not directed at any particular person, are not sufficiently specific. *Cannice v. Norwest Bank Iowa N.A.*, 189 F.3d 723, 728 (8th Cir. 1999) ("obligation to make reasonable accommodation [does not] extend[] to providing an aggravation-free environment"); *Posteraro v. RBS Citizens, N.A.*, 159 F. Supp. 3d 277, 290 (D.N.H. 2016) ("a request for 'peaceful calm environment' is too vague to be considered a request under the ADA").

Here, Hargett did not pinpoint particular stressors that Christenson created. She merely characterized his management style as a series of "hostile confrontations." (DSOF Ex. O at 2). That does not translate to a targeted demand relating to a "specific stressor." In addition, except for one isolated joke, there is no evidence, as in *Billington*, that Christenson's "confrontations" involved mocking Hargett's disability. Quite the opposite. Hargett's deposition testimony demonstrates that she was mostly preoccupied with what she perceived to be the unequal distribution of Christenson's work-related reproaches among ILL Department staff. Nor can she rely on her conclusory allegation that Christenson's criticisms were designed to induce seizures. Accordingly, Hargett's request for Christenson to end his hostile confrontations is

unreasonable.[21]   Hargett's request for "calm, fair, non-confrontational treatment" is similarly unreasonable and also unspecific. *Cannice*, 189 F.3d at 728; *Posteraro*, 159 F. Supp. 3d at 290. Because Hargett does not introduce evidence that her request was reasonable, FAU was not obligated to take action on it. *Willis*, 108 F.3d at 285.   FAU is therefore entitled to summary judgment on the Amended Complaint's failure to accommodate counts.

### B. Sex Discrimination

Hargett's second claim alleges FAU discriminated against her based on sex, in violation of Title VII, 42 U.S.C. § 2000e-2(a). (Compl. ¶¶ 81-85).  FAU argues that Hargett did not suffer any materially adverse employment action; that there is no evidence suggesting a discriminatory motive; that there is no causal link between any such putative motive and an adverse action; and that the comparator evidence is defective because men were subject to the allegedly adverse actions while women were beneficiaries of the allegedly positive ones.   Hargett makes only a conclusory effort to defend her claim, barely advancing farther than to declare that there is a "convincing mosaic" of evidence that Christenson treated women differently.   She does not cite to record evidence (though she alludes to Christenson's treatment of two male comparators).

---

[21] Hargett argues her request was reasonable because Kabat directed Christenson to keep the ILL Department as stress-free as possible.  Kabat's directive was not in response to Hargett's June 2014 letter, but rather in response to an October 2013 meeting.  There is no evidence Hargett requested any accommodation in that meeting.  That FAU separately sought to improve the atmosphere of the ILL Department is not evidence that Hargett's subsequent request was reasonable. *See Wood v. Green*, 323 F.3d 1309, 1314 (11th Cir. 2003) (explaining employer's acquiescence to earlier accommodation does not automatically deem subsequent request reasonable); *cf. Simonelli v. Univ. of Cal. at Berkeley*, 338 F. App'x 673, 674 (9th Cir. 2009) (employer's offer of alternative accommodation not admission that requested accommodation reasonable).

The *McDonnell-Douglas* framework applies to Hargett's sex discrimination claim.[22]   So too does the "convincing mosaic" alternative.  *Stevens v. City of Forest Park*, 635 F. App'x 690, 697 (11th Cir. 2015) (per curiam).   Regardless of which method she selects, the initial focus is still on the extent and relevance of the employer's discriminatory animus.   Thus, to satisfy a prima facie case of discrimination under Title VII, Hargett must adduce evidence that "(1) the employer's discriminatory animus towards the employee [was] based on the employee's protected characteristic; (2) a discharge or other significant change in the terms or conditions of employment [occurred]; and (3) [there was] a causal link between the two."  *Stimpson v. City of Tuscaloosa*, 186 F.3d 1328, 1331 (11th Cir. 1999) (per curiam).

With respect to the second component, I have already found one of the three actions reviewed in the disability section to be materially adverse, namely the suspension.   Only the first and third prongs must be further examined.   Even were I to reach beyond Hargett's barebones brief and examine her factual record, the grounds for establishing Christenson's discriminatory animus towards women are dubious.   In her Statement of Material Facts, Hargett points out that Christenson enforced the office's socialization policy more leniently towards men than women. She also cites to her and Tross's testimony that Christensen tended to manage women more abrasively, in particular criticizing Hargett and Ghannoum's work pace (though Tross was newer

---

[22] The traditional *McDonnell-Douglas* framework requires a plaintiff at the prima facie stage to show that "(1) [s]he is a member of a protected class; (2) [s]he was qualified for the position; (3) [s]he suffered an adverse employment action; and (4) [s]he was replaced by a person outside [her] protected class or was treated less favorably than a similarly-situated individual outside [her] protected class."  *Maynard v. Bd. of Regents of Div. of Univs. of Fla. Dep't of Educ.*, 342 F.3d 1281, 1289 (11th Cir. 2003).   Because this claim ultimately turns on the fourth factor – whether Hargett was treated less favorably than men – it is not necessary to investigate the other three factors independently of the "convincing mosaic" standard.

and less experienced).[23]    Finally, Hargett thought that Christenson generally acted friendlier

towards men.  Conversely, FAU cites to portions of Hargett's testimony in which she admitted

that other female co-workers were treated better than her.

I find that there is insufficient evidence of Christenson's hostility towards women.

Hargett's perception that Christenson was friendlier towards men is not particularly probative.  A

supervisor's general demeanor towards members of a protected class as compared to non-

members does not necessarily implicate prejudice towards that class.  *Kenfield v. Colo. Dep't of*

*Pub. Health & Env't*, 837 F. Supp. 2d 1232, 1241-42 (D. Colo. 2011), *aff'd* 557 F. App'x 728

(10th Cir. 2014) (such reasoning "mistakenly treat[s] 'friendliness' and 'prejudice' as

oppositional states").  Further, most of Hargett's record citations, upon inspection, do not assist

her argument.  They show only that many deponents agreed that Christenson singled out Hargett

for admonishment.  That in itself is not actionable.  *See Clark v. S. Broward Hosp. Dist.*, 601 F.

App'x 886, 899-900 (11th Cir. 2015) (without more, supervisor confronting and yelling at

female subordinate is not probative of sex-based motivations); *Chavez v. URS Fed. Tech. Serv.,*

*Inc.*, 504 F. App'x 819, 822 (11th Cir. 2013) (per curiam) (manager consistently berating female

employee in front of co-workers not sex-based).  There is only one reference in Hargett's

Statement to a citation that describes Christenson's unfair treatment of women more broadly.

That comes from Tross's deposition, wherein he remarked that "it looked like [Christenson] was

picking on – it was more the women in the office.  He was kind of like being aggressive toward

[sic] except [Bortot]." (Tross Depo. 61:2-6).  But Tross immediately clarified that there were

only three women, Hargett included, towards whom Christenson acted more "aggressive[ly]."

---

[23] Though rather than hostility relating to sex, Tross attributed Christenson's disparate treatment
to age discrimination, speculating that Christenson wanted "younger people" and "new faces."
(Tross Depo. 28:1-9).

(*Id.*).  There is also no indication that Christenson's rapport with the women who arrived after

Tross departed was negative.  Finally, Hargett's own factual statement references Christenson's

favoritism towards other women.  (PSOF 30.g, l).  A picture of a supervisor who may have had a

cold relationship with three specific women – but a positive or neutral one with others – hardly

provides enough evidence for a reasonable jury to infer sex discrimination.

Hargett's sex discrimination claim also fails because she cannot – and does not try to –

establish a causal link between Christenson's sex-based animus, if assumed to be real, and the

potential adverse action.  There is absolutely no evidence that Hargett's sex played a role in her

suspension.  Consequently, summary judgment is awarded in FAU's favor on Hargett's Title VII

sex discrimination count.

### C.  *Retaliation*

The last cause of action in the Amended Complaint alleges retaliation under the ADA and

Title VII.  (Compl. ¶¶ 74-80, 86-92).  Title VII provides that:

> It shall be an unlawful employment practice for an employer to discriminate
> against any of his employees or applicants for employment . . . because he has
> opposed any practice made an unlawful employment practice by this subchapter,
> or because he has made a charge, testified, assisted, or participated in any manner
> in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a).  The ADA contains a parallel prohibition.  42 U.S.C. § 12203(a).  The

rubric for assessing a retaliation claim is therefore the same for both statutes.  *Farley v.*

*Nationwide Mut. Ins. Co.* 197 F.3d 1322, 1336 (11th Cir. 1999).  FAU challenges only the

sufficiency of Hargett's prima facie case, and does not address the subsequent steps in the

*McDonnell-Douglas* framework.  In order to make out a prima facie case of retaliation, a

plaintiff must show that "(1) she engaged in an activity protected under Title VII [or the ADA];

(2) she suffered an adverse employment action; and (3) there was a causal connection between

the protected activity and the adverse employment action." *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008). FAU contests only the second and third prongs.

According to the Amended Complaint, the retaliatory acts include: (1) FAU's failure to reclassify Hargett's position; (2) its refusal to accommodate her reasonable requests; and (3) its "leaving her in an environment that exposed her to continued hostility and seizures." (Compl. ¶¶ 76, 88). For reasons stated earlier, FAU had no duty to accommodate the requests that are the subject of this lawsuit. As a consequence, its inaction cannot sustain the adverse action prong of Hargett's retaliation claim. *Gomez v. Laidlaw Transit, Inc.*, 455 F. Supp. 2d 81, 90 (D. Conn. 2006); *Buck v. Fries & Fries, Inc.*, 953 F. Supp. 896, 908 (S.D. Ohio 1996). Her third alleged retaliatiory act is a bare conclusion and contains no supporting factual allegations.[24] It does not support Hargett's claim. And while I did find that a non-reclassification could be materially adverse in principle, I have already explained that Hargett was not qualified for the AMP position.

In addition, Hargett raises several new incidents in her Response that she implies count as materially adverse employment actions. Most of these offer only vague and conclusory characterizations of Christenson's demeanor following her internal reports or state nothing more than "petty slights" or "minor annoyances" that would not deter a reasonable employee from reporting unlawful conduct.[25] *Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68

---

[24] *See infra*, Section D on the insufficiency of Hargett's belated hostile work environment claim.
[25] Hargett states generally that Christensen would "get very mad" and escalate his "bullying and harassment" following her meetings with Human Resources or the EOP Office. (DE 134 at 19). In the same vein, she claims that Smith, Christenson's current, and her former, supervisor, accomplished a five year old threat to "get back" at her for having once made a race discrimination complaint by allowing Christenson to maintain the status quo stress level. (*Id.* at 19-20). Both of these allegations are fatally vague. The second is also extremely remote in time from the prior protected conduct and would thus fail the causality test. For specific conduct, Hargett cites Christenson's May 17, 2012 threat, after her and Ghannoum's visit with Miller, to

(2006).  Hargett also recycles the 2014 performance review, which was a component of her discrimination theories.  But as previously discussed, the review does not constitute a materially adverse action because Hargett has not adequately demonstrated that a more complimentary review would have entitled her to a bonus.

Since the actions to which Hargett cites are not materially adverse, FAU is entitled to summary judgment on Hargett's retaliation counts.

### D. Hostile Work Environment

Hargett's Response insists that FAU "failed to address whether the evidence supports a hostile [work] environment claim under both the discrimination and retaliation provisions of the ADA and Title VII."  (DE 134 at 20).  She cites to paragraphs in the Amended Complaint that purportedly lend such support.  (*Id.*).

The Federal Rules of Civil Procedure do not permit a plaintiff "to raise new claims at the summary judgment stage."  *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1314 (11th Cir. 2004).  Pleading requirements are liberal but still obligate plaintiffs to distinguish their claims, since defendants are not expected to "to infer all possible claims that could arise out of facts set forth in the complaint."  *Id.* at 1315.  The Eleventh Circuit has held, under circumstances virtually identical to those at issue here, that a plaintiff could not dig through factual allegations scattered throughout other counts in a complaint and, at summary judgment, consolidate them into a hostile work environment claim.  *Palmer v. Albertson's LLC*, 418 F. App'x 885, 889-90

---

"write" them "up" if they continued to violate break policies.  (*Id.* at 19).  But a solitary write-up is not an adverse employment action, *Dick v. Phone Directories Co., Inc.*, 397 F.3d 1256, 1270 (10th Cir. 2005), and here there was only an unfulfilled threat of one.  In a separate section responding to the pretext issue, Hargett implies that her suspension and the reprimands leading up to it were "retaliatory."  (DE 134 at 17).  But to the extent she now intends to make these part of her retaliation claim, she neither adequately briefed these acts as retaliation nor raised them in the Amended Complaint as part of her retaliation claims.

(11th Cir. 2011) (per curiam) (citing to *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 974 (11th 2008), *abrogated on other grounds by Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). Nowhere in her Amended Complaint does Hargett give notice that she was alleging an independent cause of action for a discrimination-based or retaliatory hostile work environment. The paragraphs in the Amended Complaint to which Hargett alludes merely cherry-pick instances where she used the adjective "hostile" to characterize actions related to the claims she actually pled. (Compl. ¶¶ 19, 20, 28, 30, 41, 55, 69, 76, 88). Accordingly, there is no proper hostile work environment claim before the Court.

It is hereby **ORDERED** and **ADJUDGED** that Defendant Florida Atlantic University Board of Trustees' Motion for Summary Judgment (DE 113) is **GRANTED**. By separate order, summary judgment will be entered in favor of FAU on all counts.

**SO ORDERED** in Chambers at West Palm Beach, Florida, this 8 day of November, 2016.

DONALD M. MIDDLEBROOKS
UNITED STATES DISTRICT JUDGE

Copies to:     Counsel of Record